**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CHESTER HOFFMANN,

     Petitioner,

v.                          CASE NO. 8:19-cv-1775-TPB-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.
_____/

**ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS
CORPUS**

     Chester Hoffmann petitions (Doc. 16) under 28 U.S.C. § 2254 for a writ of habeas corpus and challenges his state court convictions for attempted second-degree murder with a weapon, witness tampering, and battery.  The Respondent argues (Doc. 14) that some grounds are procedurally barred and that all remaining grounds are without merit.  After reviewing the amended petition, the response, the relevant state court record (Doc. 14-1), and the reply (Doc. 19), the Court finds as follows:

**Factual and Procedural Background**

     An information charged Hoffmann with attempted first-degree premeditated murder, witness tampering in an investigation or proceeding involving a life felony, and battery.  (Doc. 14-2 at 8–9)  The information charged the attempted murder with a sentencing reclassification under § 775.087(1), Fla. Stat., for Hoffmann's use of machete during the commission of the crime.  (Doc. 14-2 at 8)

1

A police officer drafted an arrest affidavit which summarizes the relevant

facts (Doc. 14-3 at 84):

> On October 12, 2013, the suspect, Chester Hoffmann and his
> live-in girlfriend[ ], Chrystal Lazanis got into an argument over
> how to deal with the kids. Hoffmann then grabbed Lazanis by
> her throat against her will and slammed her head into the
> kitchen counter twice. Hoffmann and Lazanis have a child in
> common and live together as a family. Lazanis gave a sworn
> recorded interview that stated that she had been choked by
> Hoffmann and that Hoffmann slammed her head into the
> counter twice. Lazanis advised that their two children [were]
> home when this incident took place. One child only heard the
> incident and the other saw the incident. Lazanis also stated
> that she left the residence and went to her neighbor[ ], Serena
> Wood's residence to get help. She stated that she asked Wood
> to call 911 and to please go get the kids. She stated that she
> then observed Wood leave to get the kids but came back
> injured. She stated that there was video outside of her
> residence. Lazanis signed a consent to search [ ] her residence,
> out[side] building[,] and vehicle on the property.
>
> Hoffmann was interviewed post-*Miranda* and he confessed to
> battering Lazanis and hitting Wood with a large stick.
>
> I learned that Wood had been hit in the back of her head and
> on her left arm with an object. I also learned that there was
> possibly video of the incident involving Wood. A check revealed
> that there was video of the attack on Wood. The video shows
> Hoffmann cross the street and crouch down behind an[ ] object
> waiting. Hoffmann is then observed moving closer to Wood's
> residence and crouching again. Wood can be seen coming from
> her residence crossing the road toward Lazanis' residence.
> Hoffmann is seen jumping out behind Wood and striking her in
> the back of the head with what appears to be a machete. Wood
> falls and Hoffmann then strikes Wood again while she is on the
> ground.
>
> A search of the rear shed revealed a machete. This machete
> had what appeared to have blood on it.
>
> I then responded to the Lakeland Regional Medical Center
> (LRMC) and conducted a sworn recorded interview with Wood.
> She stated that her neighbor Lazanis came over asking for her
> to call 911 and to go get the kids from her residence. Wood
> stated that she was calling 911 and was walking across the
> street from her house to Lazanis' house to get the kids when

> Hoffmann hit her in the back of the head. She stated that she did not know what she was hit with at first. She stated that she fell and Hoffmann then stood over her and hit her in the left arm with a machete. She stated that she got up and ran back home until the police arrived. Wood stated that she was transported to the hospital. She stated that she had stitches in her head and a fractured left arm and [a] large laceration on her left arm that was going to require surgery.
>
> I then interviewed Hoffmann again at the Central District Command. When confronted about telling me he hit Wood with a large stick he stated that it was a machete. He stated that the machete was in the front yard because he had been trimming trees. He stated that after hitting Wood with the machete he put it back in the rear shed where he normally keeps it. The machete was recovered in the location Hoffmann advised he had put it.
>
> Hoffmann intentionally obtained a deadly weapon (machete) and hid waiting for Wood to come by with the intent of causing death. Hoffmann then ambushed Wood hitting her in the back of the head with the machete. Hoffmann then proceeded to stand over Wood and hit her again with the machete.
>
> Wood was admitted to LRMC and is in stable condition.

Facing two life felonies punishable by life in prison for the attempted first-degree murder and witness tampering charges, Hoffmann entered into an agreement with the prosecutor. *See* §§ 775.087(1)(a), 777.04(4)(b), 782.04(1)(a), and 914.22(2)(e), Fla. Stat. The prosecutor agreed to amend the information and reduce the charges to attempted second-degree murder with a weapon and witness tampering in a misdemeanor investigation. (Doc. 14-2 at 27–28) In exchange for the reduction of the charges, Hoffmann agreed to enter an open plea. (Doc. 14-2 at 28) The amended information reduced the attempted murder charge to a first-degree felony punishable by thirty years and reduced the witness tampering charge to a third-degree felony punishable by five years. *See* §§ 775.087(1)(b), 777.04(4)(c), 782.04(2), and 914.22(2)(a), Fla. Stat. The battery charge remained unchanged.

Hoffmann pleaded no contest to the attempted murder and witness tampering charges and pleaded guilty to the battery charge. (Doc. 14-2 at 39) After Hoffmann presented mitigating evidence at sentencing (Doc. 14-2 at 47–61), the trial court sentenced Hoffmann to fifteen years in prison for the attempted murder, a concurrent five years for the witness tampering, and time served for the battery. (Doc. 14-2 at 87–95) Hoffmann did not appeal his convictions and sentences and instead moved for post-conviction relief. (Docs. 14-2 at 124–39 and 14-3 at 41–62) The post-conviction court denied relief without an evidentiary hearing (Docs. 14-2 at 143–44 and 14-3 at 64–66), and the state appellate court affirmed. (Docs. 14-2 at 214 and 14-3 at 184) Hoffmann's federal petition follows.

## **Legal Standards**

### A.   **AEDPA**

Because Hoffmann filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, AEDPA governs the review of his claims. *Lindh v. Murphy*, 521 U.S. 320, 336–37 (1997). AEDPA modified 28 U.S.C. § 2254(d) and created a highly deferential standard for federal court review of a state court adjudication by requiring:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an
>          unreasonable determination of the facts in light
>          of the evidence presented in the State court
>          proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), interprets this constraint on

the power of the federal habeas court to grant a state prisoner's petition:

> Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion opposite
> to that reached by [the U.S. Supreme Court] on a question of
> law or if the state court decides a case differently than [the
> U.S. Supreme Court] has on a set of materially
> indistinguishable facts. Under the "unreasonable application"
> clause, a federal habeas court may grant the writ if the state
> court identifies the correct governing legal principle from [the
> U.S. Supreme Court's] decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

Clearly established federal law refers to "the holdings, as opposed to the dicta, of

[the U.S. Supreme Court Court's] decisions as of the time of the relevant state-court

decision." *Williams*, 529 U.S. at 412.

"The focus . . . is on whether the state court's application of clearly

established law is objectively unreasonable . . . ." *Bell v. Cone*, 535 U.S. 685, 694

(2002).  A federal petitioner must show that the state court's ruling was "so lacking

in justification that there was an error well understood and comprehended in

existing law beyond any possibility of fairminded disagreement." *Harrington v.

Richter*, 562 U.S. 86, 103 (2011).

A factual determination by the state court is not unreasonable "merely

because the federal habeas court would have reached a different conclusion in the

first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  A federal habeas court may

grant relief "only if, in light of the evidence presented in the state court proceedings,

no reasonable jurist would agree with the factual determinations upon which the state court decision is based." *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 948–49 (11th Cir. 2016). Also, a state court's factual determinations are presumed correct, and a petitioner carries the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 693. Consequently, "review under [Section] 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

If the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons in the opinion and defers to those reasons if reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). If the last state court decision is without reasons, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* at 1192.

## B.   Ineffective Assistance of Counsel

Hoffmann asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984), explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel"

> guaranteed the defendant by the Sixth Amendment. Second,
> the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance of counsel claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To meet this burden the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors,

7

he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill*, 474 U.S. at 59).

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.  A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful.  *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105.  "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

## C.   Exhaustion and Procedural Default

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on federal habeas.  28 U.S.C. § 2254(b)(1)(A).  The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971).  The

state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim as procedurally barred under state law, the federal court instead denies the claim as procedurally barred on federal habeas. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

A federal court also denies a claim as procedurally barred if the state court denied the claim on an independent and adequate state procedural ground. *Coleman*, 501 U.S. at 729–30. The last state court reviewing the federal claim must clearly and expressly state that the ruling rests on the state procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court rejected the federal claim in an unexplained decision, the federal habeas court looks through the unexplained decision to the last reasoned order to rule on the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). If the last reasoned order imposed the state procedural bar, the federal court presumes that the later unexplained decision did not silently disregard the bar and consider the merits. *Id.*

A petitioner may excuse a procedural bar on federal habeas either by showing cause and actual prejudice from the alleged violation of federal law or by showing a

miscarriage of justice based on actual innocence. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## Analysis

## Ground One

Hoffmann asserts that the prosecutor violated his federal right to due process by filing an amended information which was not sufficiently precise to apprise him of the criminal charges ("sub-claim A") and the state court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by imposing the sentencing enhancement for use of a weapon without a finding by a jury that he used a weapon ("sub-claim B"). (Doc. 16 at 9)

### Sub-claim A

Hoffmann asserts that the prosecutor violated his federal right to due process by filing an amended information which failed to allege that he "actually possessed" a weapon and contends that the amended information instead erroneously alleged that he "carried, displayed, used, threatened to use, or attempted to use" a weapon. (Doc. 16 at 9)

The Respondent asserts that the sub-claim A (1) is unexhausted because Hoffmann failed to alert the state court to the federal nature of his claim and failed to raise the claim in the procedurally proper manner and (2) is waived because Hoffmann entered a plea. (Doc. 14 at 8)

Hoffmann raised the claim in ground three of his motion to correct his

sentence but failed to alert the state court to the federal nature of his claim (Doc.

14-2 at 131–32):

> Also in the defendant's charging information, the State failed
> to charge or prove "actual possession" of a weapon [and] only [ ]
> alleged that the defendant carried, displayed, used, threatened,
> or attempted to use a weapon. Therefore, the State may not use
> [Fla. Stat.] § 775.087 felony reclassification in order to
> reclassify his offense.
>
> It is a fundamental principal of due process that a defendant
> may not be convicted of a crime that has not been charged by
> the State. An error that directly results from such a conviction
> is "by definition fundamental."

Hoffmann failed to "cit[e] in conjunction with the claim the federal source of

law on which he relie[d] or a case deciding such a claim on federal grounds, or [ ]

simply label[ ] the claim 'federal.'" *Baldwin*, 541 U.S. at 32. His general reference

to "due process" was not enough. *Gray v. Netherland*, 518 U.S. 152, 163 (1996) ("We

have also indicated that it is not enough to make a general appeal to a

constitutional guarantee as broad as due process to present the 'substance' of such a

claim to a state court.") (citing *Anderson v. Harless*, 459 U.S. 4 (1982)). Also,

fundamental error is an issue of state law. *Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d

1290, 1299 (11th Cir. 2017). Consequently, the claim is unexhausted.

Hoffmann could return to state court to exhaust the federal due process claim

by asserting the claim in a motion to correct his sentence and by appealing the post-

conviction court's denial of the claim. *Battle v. State*, 72 So. 3d 311, 312 (Fla. 2d

DCA 2011) ("[A] claim that a sentence was illegally imposed because the

information did not charge the defendant with an element required for his sentence

is cognizable in a rule 3.800(a) motion."). However, because Hoffmann's claim is "plainly meritless," the Court declines to grant him a stay to exhaust the claim. *Rhines*, 544 U.S. at 277 ("[E]ven if a petitioner had good cause for [his failure to present his claims first to the state courts], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.").

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "[A]n individual who enters a plea of *nolo contendere* waives all nonjurisdictional defects." *United States v. Broome*, 628 F.2d 403, 404 (5th Cir. 1980).[1] "[T]he omission from indictment of an element of the charged offense is a nonjurisdictional defect." *United States v. Brown*, 752 F.3d 1344, 1354 (11th Cir. 2014) (citing *United States v. Cotton*, 535 U.S. 625 (2002)). However, "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute," the charging document is jurisdictionally defective. *Brown*, 752 F.3d at 1352 (citing *United States v. Peter*, 310 F.3d 709 (11th Cir. 2002)).

---

[1] *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (adopting as binding precedent "the decisions of the United States Court of Appeals for the Fifth Circuit [ ], as that court existed on September 30, 1981").

The amended information charged Hoffmann with attempted second-degree murder with a weapon, as follows (Doc. 14-2 at 22):

> Chester R. Hoffmann, on or about October 12, 2013, in the County of Polk and State of Florida, did unlawfully attempt to commit murder in the second degree in that by an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, did attempt to kill Serena Dawn Wood by Serena Dawn Wood[2] and during the commission of said felony Chester R. Hoffmann carried, displayed, used, threatened to use, or attempted to use a weapon, contrary to Florida Statutes 775.087, 777.04, and 782.04.

Because the amended information alleged conduct that constitutes attempted second-degree murder, the amended information was not jurisdictionally defective. *Coicou v. State*, 39 So. 3d 237, 241 (Fla. 2010) ("[A]ttempted second-degree murder has two elements: '(1) the defendant intentionally committed an act that could have resulted, but did not result, in the death of someone, and (2) the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life.'") (citation omitted).

Hoffmann asserts that the amended information failed to allege that he "actually possessed" a weapon and contends that the amended information instead erroneously alleged that he "carried, displayed, used, threatened to use, or attempted to use" a weapon.  (Doc. 16 at 9)  The prosecutor could not have charged Hoffmann with a sentencing enhancement for actual possession of a weapon because that enhancement applies only to the possession of a firearm, destructive

---

[2] The information contains an immaterial scrivener's error (Doc. 14-2 at 22): "Chester R. Hoffmann . . . did attempt to kill Serena Dawn Wood by Serena Dawn Wood . . . ."

device, semiautomatic firearm, or machine gun.  § 775.087(2), (3), Fla. Stat.

Hoffmann possessed a machete when he committed the attempted murder.  (Doc.

14-3 at 84)  Consequently, the amended information correctly charged Hoffmann

with "carr[ying], display[ing], us[ing], threaten[ing] to use, or attempt[ing] to use

any weapon." § 775.087(1), Fla. Stat.  Because the amended information alleged

conduct that constitutes a crime, the amended information was not jurisdictionally

defective.

**Sub-claim B**

Hoffmann asserts that the state court violated *Apprendi v. New Jersey*, 530

U.S. 466 (2000) by imposing the sentencing enhancement for use of a weapon

without a finding by a jury that he possessed a weapon.  (Doc. 16 at 9)  The post-

conviction court denied the claim as follows (Doc. 14-2 at 143) (state court record

citations omitted):

> . . . Defendant argues that his sentence enhancement for using
> a weapon was illegal as the jury did not make a separate
> finding that the Defendant used a weapon. The Court would
> point out that the Defendant entered an open plea to the
> Amended Information. Therefore, no jury finding was
> required.[3]

*Apprendi*, 530 U.S. at 490, holds that "[o]ther than the fact of a prior

conviction, any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury, and proved beyond a reasonable

---

[3] Hoffmann raised the same claim in his motion for post-conviction relief, and the post-
conviction court denied the claim. (Doc. 14-3 at 57–60, 66) In his Section 2254 petition,
Hoffmann challenges the post-conviction court's ruling on the claim raised in his motion to
correct sentence. (Doc. 16 at 10) Therefore, this Court evaluates that ruling for
reasonableness under Section 2254(d).

doubt." By pleading no contest, Hoffmann waived all non-jurisdictional defects in the state criminal proceedings. *Tollett*, 411 U.S. at 267; *Broome*, 628 F.2d at 404. Because Hoffmann knowingly and voluntarily waived his right to a jury trial when he pleaded no contest (Doc. 14-2 at 33–36), he waived this *Apprendi* claim. *See United States v. Cabezas*, 136 F. App'x 223, 227 (11th Cir. 2005) ("Because *Apprendi* claims are not jurisdictional, and Cabezas's unconditional guilty plea waived his right to challenge all non-jurisdictional defects, we decline to address the merits of his challenge.").

Even so, the amended information charged Hoffmann with attempted second-degree murder with a weapon. (Doc. 14-2 at 22) The imposition of the sentencing enhancement under Section 775.087(2) for use of a weapon during the commission of the crime increased the statutory maximum from fifteen years for a second-degree felony to thirty years for a first-degree felony. §§ 775.082(3)(b), (d) and 775.087(1)(b), Fla. Stat. When Hoffmann pleaded no contest, he admitted every element of the offense charged in the amended information. (Doc. 14-2 at 33–36) *Lott v. United States*, 367 U.S. 421, 426 (1961) ("Although it is said that a plea of *nolo contendere* means literally 'I do not contest it,' and 'is a mere statement of unwillingness to contest and no more,' it does admit 'every essential element of the offense (that is) well pleaded in the charge.'") (citations omitted).

At the change of plea hearing, Hoffmann confirmed that he had reviewed all relevant discovery in the case (Doc. 14-2 at 30):

> [Court:]                          And we've had many hearings in this
>                                          case, is that correct?

| [Hoffmann:] | Yes, ma'am. |
|---|---|
| [Court:] | And so, you've had . . . you feel comfortable going forward knowing what you know about this case? |
| [Hoffmann:] | Yes, ma'am. |
| [Court:] | And so you know about all the witnesses — you know about the discovery — you know about a videotape — you know about all the facts in this case, correct? |
| [Hoffmann:] | Yes, ma'am. |

Because the sentencing enhancement for use of a weapon under Section 775.087(1) did not violate *Apprendi*, the post-conviction court did not unreasonably deny the claim.  Ground One is denied.

## **Ground Two**

Hoffmann asserts that the trial court denied his Sixth Amendment right to be informed of the nature and cause of the accusation.  (Doc. 16 at 11)  He contends that the trial court neither provided him a copy of the amended information nor read the charges to him in open court and that trial counsel never advised him of the nature of the charges.  (Doc. 16 at 11)

The Respondent asserts that the claim is unexhausted and procedurally barred.  (Doc. 14 at 9)  Hoffmann responds that he raised the claim in his motion to correct his sentence but contends that the post-conviction court never ruled on the claim.  (Doc. 16 at 11)  He further contends that he raised the claim in his motion for post-conviction relief filed on September 26, 2017.  (Doc. 16 at 12) In Hoffmann's motion to correct his sentence (Doc. 14-2 at 124–38) and his amended motion for post-conviction relief (Doc. 14-3 at 41–62), Hoffmann failed to raise the claim.

Hoffmann arguably raised the claim in his brief on appeal of the order denying his motion to correct his sentence. (Doc. 14-2 at 194–95, 198)  However, a state appellate court will not review a claim raised for the first time on post-conviction appeal. *Jackson v. State*, 93 So. 3d 395, 396 (Fla. 2d DCA 2012).  He arguably raised the claim in his second motion to correct his sentence. (Doc. 14-4 at 102–03, 106)  However, he failed to appeal the post-conviction court's order denying relief.  (Doc. 14-2 at 2)  Even so, the Sixth Amendment claim attacking his convictions was not cognizable in the Rule 3.800(a) proceedings. *Parish v. State*, 249 So. 3d 734, 735 (Fla. 2d DCA 2018) ("'[R]ule 3.800(a) is limited to claims that a sentence itself is illegal, without regard to the underlying conviction.'") (citation omitted).

Because Hoffmann failed to give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process, Hoffmann failed to exhaust his remedies in state court. *Boerckel*, 526 U.S. at 845.  *Porter v. Att'y Gen.*, 552 F.3d 1260, 1268 (11th Cir. 2008), *rev'd on other grounds*, *Porter v. McCollum*, 558 U.S. 30 (2009).  If Hoffmann returned to state court to exhaust his remedies, the post-conviction court would deny the claim on a state procedural ground. *Snowden*, 135 F.3d at 736.  Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.").  Because Hoffmann fails to demonstrate either cause and actual prejudice or a miscarriage of justice to excuse the procedural bar,

the claim is barred from federal review.  *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37.

Even if exhausted, Hoffmann waived all non-jurisdictional defects by pleading no contest.  *Tollett*, 411 U.S. at 267; *Broome*, 628 F.2d at 404.  Because a violation of the Sixth Amendment right to be informed of the nature and cause of the accusation would not deprive the state court of subject matter jurisdiction over the felony prosecution for a violation of state law, Hoffmann waived the claim by entering his plea.  Ground Two is denied.

## Ground Three

Hoffmann asserts that trial counsel was ineffective for not communicating a plea offer ("sub-claim A"), for not objecting to the sentence or filing a motion to correct the sentence while the appeal was pending ("sub-claim B"), and for not objecting to the sentencing reclassification for use of a weapon during the commission of the crime ("sub-claim C").  (Doc. 16 at 12–13)

### Sub-claim A

Hoffmann asserts that trial counsel was ineffective "for failing to communicate a plea deal to [Hoffmann] in its [entirety]."  (Doc. 16 at 12)  The Respondent asserts that the claim is unexhausted.  (Doc. 14 at 11)

In his amended motion for post-conviction relief, Hoffmann asserted that trial counsel was ineffective for "mislead[ing] [him] as to how much time he would receive if [he] took the plea offer."  (Doc. 14-3 at 52)  In his brief on appeal, he also asserted that trial counsel was ineffective for misadvising him about the sentence

that he would receive if he entered the plea.  (Doc. 14-3 at 117–18, 119–20)  Because

Hoffmann gave the state court one full opportunity to resolve the federal claim by

invoking one complete round of the state's established appellate review process, he

exhausted his remedies in state court.  *Boerckel*, 526 U.S. at 845.

The post-conviction court denied the claim as follows (Doc. 14-3 at 65) (state

court record citations omitted):

> [T]he Defendant asserts that trial counsel misled the
> Defendant as to the sentence he would receive if he entered a
> plea . . . . The Defendant asserts that trial counsel advised him
> that he would be sentenced to a 15-year split sentence whereas
> the sentencing court sentenced him to a 30-year split sentence.
> The Defendant also complains that the sentencing court
> indicated that he would be sentenced as to count 1 to a second-
> degree felony whereas he was sentenced as to a first-degree
> felony on count 1.
>
> The transcript of the Defendant's plea and sentencing hearing
> make[s] clear that the State had agreed to reduce counts 1 and
> 2 when the Defendant agreed to enter an open plea to the
> sentencing court. Count 1 was reduced from attempted murder
> in the first degree (weapon) to attempted second degree murder
> (weapon). Count 2 was also reduced from a life felony to a
> third-degree felony.
>
> The transcript of the Defendant's plea hearing reflects that the
> Defendant was advised by the sentencing court that he was
> charged with a first-degree felony as to count 1 punishable by
> up to 30 years prison. The Defendant indicated he understood
> the charges against him and that the sentencing court could
> impose any sentence up to the maximum permitted by law.
>
> Additionally, the transcript of the plea hearing reflects that the
> Defendant was satisfied with trial counsel's representation and
> that he had the opportunity to review the evidence in the case.
> Based on the above, [the claim] is denied.

At the change of plea hearing, in the presence of Hoffmann, trial counsel

informed the trial judge that the prosecutor and Hoffmann had reached an

agreement (Doc. 14-2 at 28):

| | |
|---|---|
| [Trial counsel:] | Yes, Your Honor. . . [T]he State in my understanding is going to amend the information to attempted second-degree murder. |
| [Court:] | Okay. |
| [Trial counsel:] | And they're going to amend the tampering to a third-degree felony. |
| [Court:] | Alright. |
| [Trial counsel:] | . . . and the domestic battery will stay the same as a first-degree misdemeanor. |
| [Court:] | Alright. |
| [Trial counsel:] | . . . in return Mr. Hoffmann, is going to do an open plea for those charges. |
| [Court:] | Alright. |
| [Trial counsel:] | And we are . . . going to ask for a PSI and ask that this be set for roughly six weeks. |
| [Court:] | Are we ready — is there an amended information? |
| [Prosecutor:] | It's on its way up, Judge. |

Before Hoffmann pleaded guilty, the trial judge informed Hoffmann of the nature of each charge and the statutory maximum for each charge (Doc. 14-2 at 29–31):

| | |
|---|---|
| [Court:] | And Mr. Hoffmann, we're here on an amended information. It is my understanding you're going to enter a plea today and then we're going to set [ ] sentencing. Is that your understanding? |
| [Hoffmann:] | Yes, ma'am. |
| [Court:] | If you will raise your right hand. Do you swear to tell the truth, the whole truth, and nothing but the truth? |

[Hoffmann:]               Yes, ma'am.

. . .

[Court:]                  Alright, sir. You're here on the amended information that was filed today. You're charged with attempted murder in the second degree which is a first-degree felony, punishable by thirty years in Florida State Prison. Count Two, tampering with a witness in a non-felony investigation which is a third-degree felony, punishable by five years [of] incarceration. And Count Three, domestic battery, punishable by 364 days in the Polk County Jail. It's my understanding that you're going — you wish to enter a — a plea in this case? Is that correct?

[Hoffmann:]               Yes, ma'am.

[Court:]                  Now have you had all the time that you need to discuss this case with your attorney?

[Hoffmann:]               Yes, ma'am.

[Court:]                  And we've had many hearings in this case, is that correct?

[Hoffmann:]               Yes, ma'am.

[Court:]                  And so, you've had . . . you feel comfortable going forward knowing what you know about this case?

[Hoffmann:]               Yes, ma'am.

[Court:]                  And so you know about all the witnesses — you know about the discovery — you know about a videotape — you know about all the facts in this case, correct?

[Hoffmann:]               Yes, ma'am.

[Court:]                  And you believe knowing that and discussing it with your attorney — do you think it's in your best interest to enter this plea?

21

| | |
|---|---|
| [Hoffmann:] | Yes, ma'am. |
| [Court:] | You understand that the court — that there is no plea agreement in place so that it will be up to the court to determine what the — what the appropriate sentence is in this case? . . . |
| | . . . And we're going to do a pre-sentence investigation, so you'll have an opportunity to speak as well, as they will do some background on you, sir, and talk to your family members as well and they'll certainly be allowed to come to sentencing and speak on your behalf — you understand the process? |
| [Hoffmann:] | Yes, ma'am. |
| [Court:] | Is there anything else that you want your attorney to do in this case, that he has not done? |
| [Hoffmann:] | No, ma'am. |
| [Court:] | Are you satisfied with his services? |
| [Hoffmann:] | Yes, ma'am. |

An information initially charged Hoffmann with attempted first-degree premeditated murder with a weapon and tampering with a witness in an investigation or proceeding involving a life felony.  (Doc. 14-2 at 8)  Both crimes were life felonies punishable by life.  §§ 775.082(3)(a)(3), 775.087(1)(a), 777.04(4)(b), 782.04(1)(a), 914.22(2)(e), Fla. Stat.  *Strickland v. State*, 437 So. 2d 150, 152 (Fla. 1983).  As part of the agreement with Hoffmann, the prosecutor reduced the charges to attempted second-degree murder with a weapon, a first-degree felony punishable by thirty years, and tampering with a witness in a misdemeanor investigation, a

third-degree felony punishable by five years. (Doc. 14-2 at 22)  §§ 775.082(3)(b)(1),

(3)(e), 775.087(1), 777.04(4)(c), 782.04(2), and 914.22(2)(a), Fla. Stat.

Before Hoffmann entered his plea, the trial judge asked Hoffmann if he

understood the nature of each charge in the amended information and the statutory

maximum sentence for each charge.  The trial judge further asked Hoffmann if he

understood that he would enter a plea without an agreement concerning the length

of the sentence and that the trial judge would determine the appropriate sentence.

Hoffmann's representations under oath that he understood the terms of the plea

"carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74

(1977) ("For the representations of the defendant, his lawyer, and the prosecutor at

such a hearing, as well as any findings made by the judge accepting the plea,

constitute a formidable barrier in any subsequent collateral proceedings. Solemn

declarations in open court carry a strong presumption of verity.").

Even though the trial judge did not inform Hoffmann that he was pleading

guilty to attempted second-degree murder "with a weapon," the trial judge

accurately informed Hoffmann that he was pleading guilty to a first-degree felony

punishable by thirty years.  (Doc. 14-2 at 29)  The record further demonstrates that

the prosecutor filed the amended information charging attempted second-degree

murder with a weapon in open court, just before Hoffmann entered his plea.  (Doc.

14-2 at 28)  The amended information listed the charge in capital letters as

"attempted murder in the second degree (weapon)."  (Doc. 14-2 at 22)  Because the

record demonstrates that the trial judge adequately informed Hoffmann of the

nature of the charges and the sentences that he faced, the record refuted

Hoffmann's claim, and the post-conviction court did not unreasonably deny the

claim.

Lastly, even if trial counsel deficiently performed, Hoffmann could not

demonstrate a "'reasonable probability that, but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial.'" *Lee*, 137 S. Ct. at

1965 (quoting *Hill*, 474 U.S. at 59).  A video recording of the crime showed that

Hoffmann snuck up behind the unarmed victim, struck her on the head with a

machete and caused her to fall, and struck her again with the machete while she

was on the ground.  (Doc. 14-3 at 84)  The victim told police that she was calling 911

to report that Hoffmann had battered his wife when Hoffmann struck her with the

machete.  (Doc. 14-3 at 84)  Hoffmann admitted to police that he struck the victim

with the machete and told police that he had placed the machete in a shed after the

crime.  (Doc. 14-3 at 84)  Police found the machete in the shed and observed blood

on the machete.  (Doc. 14-3 at 84)

Facing an attempted first-degree murder charge which carried a life sentence

and which was supported by overwhelming, irrefutable evidence of guilt, including

Hoffmann's own confession, Hoffmann could not demonstrate a reasonable

probability that he would have rejected the extremely favorable plea offer and

insisted on going to trial.  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("[A]

petitioner must convince the court that a decision to reject the plea bargain would

have been rational under the circumstances."); *Diveroli v. United States*, 803 F.3d

1258, 1265 (11th Cir. 2015) (holding that the defendant failed to demonstrate that rejecting the plea would have been rational under the circumstances where "the record establishe[d] that [the defendant] faced overwhelming evidence of guilt and had no valid affirmative defenses").

**Sub-claim B**

Hoffmann asserts that trial counsel was ineffective for not objecting to the sentence or filing a motion to correct the sentence while the appeal was pending. (Doc. 16 at 12–13)  The post-conviction court denied the claim as follows (Doc. 14-3 at 65–66) (state court record citations omitted):

> [T]he Defendant asserts that trial counsel failed to object to the Defendant being sentenced for a first-degree felony offense after orally pronouncing count 1 as a second-degree felony offense. The Court can find no indication that the trial court indicated that count 1 was a second-degree felony offense. To the contrary, at the plea hearing the trial court clearly advised the Defendant that he was entering a plea to a first-degree felony on count 1 (attempted second degree murder). The judgment and sentence in this case correctly reflects the oral pronouncement of the sentencing court. Based on the above, [the claim] is denied.

As explained above, before Hoffmann entered the plea, the trial judge confirmed that Hoffmann understood that he was pleading no contest to attempted second-degree murder, a first-degree felony punishable by thirty years.  (Doc. 14-2 at 29)  At sentencing, the trial judge pronounced Hoffmann's sentence as follows (Doc. 14-2 at 76–77):

> [Court:]          All right, sir. I will adjudicate you of all charges. As to the domestic battery charge, I'll sentence you to time served. As to the tampering with a witness charge, I'll sentence you to five years Florida State Prison. As to the attempted

25

> second-degree murder charge, I'll
> sentence you to fifteen years Florida State
> Prison, followed by fifteen years of
> probation. . . .

The judgment reflects that Hoffmann pleaded guilty to attempted second-degree

murder, a violation of Section 782.04 and a first-degree felony, and the written

sentence reflects that he received a fifteen-year prison sentence.  (Doc. 14-2 at 88,

91)  If trial counsel had objected to the sentence, the trial court would have

overruled the objection.  Consequently, the post-conviction court did not

unreasonably deny the claim.  *Pinkney*, 876 F.3d at 1297 ("[A]n attorney will not be

held to have performed deficiently for failing to perform a futile act, one that would

not have gotten his client any relief.").

**Sub-claim C**

Hoffmann asserts that trial counsel was ineffective for not objecting to the

sentencing reclassification for use of a weapon during the commission of the crime

because "the grounds for the enhancement must be clearly charged in the

information."  (Doc. 16 at 12–13)  The Respondent asserts that the claim is

unexhausted.  (Doc. 14 at 11)

In both his amended motion for post-conviction relief (Doc. 14-3 at 60) and his

brief on post-conviction appeal (Doc. 14-3 at 128), Hoffmann failed to fairly present

the federal claim to the state court.  *Kelley v. Sec'y, Dep't Corrs.*, 377 F.3d 1317,

1345 (11th Cir. 2004) ("'The ground relied upon must be presented face-up and

squarely; the federal question must be plainly defined. Oblique references which

hint that a theory may be lurking in the woodwork will not turn the trick.'")
(quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).

If Hoffmann returned to state court to exhaust the claim, the state court
would deny the claim as untimely and successive.  Fla. R. Crim. P. 3.850(b), (h).
Consequently, the claim is procedurally barred in federal court.  *Snowden*, 135 F.3d
at 736.  Because Hoffmann fails to demonstrate either cause and actual prejudice or
a miscarriage of justice to excuse the procedural bar, the claim is procedurally
barred from federal review.  *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37.

Even so, the record refutes the claim.  The amended information charged
Hoffmann with the sentencing reclassification for use of a weapon during the
commission of the crime under Section 775.087(1).  (Doc. 14-2 at 22)  By pleading no
contest, Hoffmann admitted every element of the crime charged.  *Lott*, 367 U.S. at
426.  The arrest affidavit states that Hoffmann attempted to murder the victim
with a machete.  (Doc. 14-3 at 84)  Because the trial court would have overruled an
objection to the sentencing reclassification, trial counsel did not deficiently perform.
*Pinkney*, 876 F.3d at 1297.  Ground Three is denied.

## Ground Four

Hoffmann asserts that the judgment and sentence do not conform with the
trial judge's oral pronouncement of the sentence.  (Doc. 16 at 14–15)  He asserts
that, because the sentencing order imposes a sentence that is harsher than the
sentence imposed by the trial judge's oral pronouncement, the state court violated
his federal right against double jeopardy.  (Doc. 16 at 14)

Hoffmann raised this claim in ground four of his amended motion for post-conviction relief (Doc. 14-3 at 55–56) and in ground three of his brief on post-conviction appeal.  (Doc. 14-3 at 123–24)  Even though the post-conviction court did not address the double jeopardy claim in the order denying relief (Doc. 14-3 at 65–66), this Court presumes that the post-conviction court adjudicated the claim on the merits.  *Johnson v. Williams*, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits — but that presumption can in some limited circumstances be rebutted.").  Hoffmann must demonstrate no reasonable basis for the denial of relief.  *Richter*, 562 U.S. at 98.

As explained above, the record demonstrates that the trial judge pronounced Hoffmann's sentences as follows: (1) time served for domestic battery, (2) fifteen years of prison for attempted second-degree murder, and (3) a concurrent five years for witness tampering.  (Doc. 14-2 at 76–77)  The judgment reflects that Hoffmann pleaded guilty to attempted second-degree murder, a first-degree felony, witness tampering, a third-degree felony, and battery, a first-degree misdemeanor.  (Doc. 14-2 at 87)  The written sentence reflects that Hoffmann received fifteen years for the attempted murder, a concurrent five years for the witness tampering, and time served for the battery.  (Doc. 14-2 at 91–93)  Because the record demonstrates that the written sentence conforms with the trial judge's oral pronouncement, the record refutes the claim.  Consequently, the post-conviction court did not unreasonably deny the claim.  Ground Four is denied.

## Conclusion

Because Hoffmann fails to meet his heavy burden under AEDPA, his amended petition for the writ of habeas corpus (Doc. 16) is **DENIED**.  The clerk must enter a judgment against Hoffmann and **CLOSE** the case.

### Denial of Certificate of Appealability and
### Leave to Appeal *In Forma Pauperis*

Because Hoffmann fails to show that reasonable jurists would debate either the merits of the underlying claims or the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2).  *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, on this 25th day of August, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**